IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES WRIGHT | * | |
| Petitioner, | * | Civil No. RDB-10-2908 |
| v. | * | Criminal No. RDB-05-78 |
| UNITED STATES OF AMERICA | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>MEMORANDUM OPINION</u>

On October 10, 2010, James Wright[1] filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 89). Wright challenges the sentence of 240 months plus five years supervised release that this Court imposed on June 2, 2006. The Petitioner further filed a motion for discovery, leave to amend, and a request for appointment of counsel (ECF No. 101). The Government filed an opposition brief (ECF No. 102). This Court has reviewed the record and finds that no hearing is necessary.[2] *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, the Motion to Vacate under 28 U.S.C. § 2255 is DENIED.

<u>BACKGROUND</u>[3]

---

1 Because the Petitioner is proceeding without counsel, his filing has been "liberally construed" and is "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted).

2 Because this Court finds that no hearing is necessary, Wright's request for appointment of counsel is DENIED. Pursuant to Rule 8(c) of the Rules Governing Habeas Corpus Cases, "the judge must appoint an attorney to represent a moving party" if an evidentiary hearing is warranted. Because no such hearing is warranted in this matter, Wright is not entitled to counsel, and no appointment is warranted in this case.

3 The background facts in this case are largely taken from the United States Court of Appeals for

On September 14, 2004, law enforcement directed Jeffrey Saffell, a confidential informant, to set up a drug deal with the Petitioner, James Wright. *United States v. Wright*, 333 F. App'x 772, 774 (4th Cir. 2009). The officers involved outfitted Saffell with an audio-recording device (through the use of a "body wire") and placed a video recording device in Saffell's car to monitor Saffell's conversations with Wright setting up and executing their transaction. *Id.* Prior to meeting Wright, Saffell was searched by the officers to ensure that he was not in possession of any contraband, money, or drug paraphernalia, as is customary in controlled buys. *Id.* Saffell then met with Wright, and drove around Baltimore until Wright picked up Dante Couther, who supplied Wright with drugs to sell to Saffell for $2,000. *Id.* at 775. Wright examined the drugs and gave them to Saffell, who then dropped off Wright and Couther, and then met with the officers to turn over the two ounces of cocaine he had bought from Wright. *Id.* After the transaction took place, one of the officers involved in the case subsequently lost the tape containing the first recorded conversation between Wright and Saffell, though other tape recordings from Saffell's body wire were preserved, as was the video recording from Saffell's car. *Id.* at 774.

Both Wright and Couther were arrested and indicted by a grand jury on one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base (21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and (b)(1)(A)) and one count of possession with intent to distribute 50 grams or more of cocaine base (21 U.S.C. § 841(a)(1) and (b)(1)(A)) and aiding and abetting the same (18 U.S.C. § 2). *Id.* at 775.

---

the Fourth Circuit opinion affirming this Court's imposition of sentence in this matter. *See United States v. Wright*, 333 F. App'x 772 (4th Cir. 2009).

At Wright's jury trial before this Court, the government presented testimony from Saffell, the officers involved in the controlled buy, and played portions of the video recording from Saffell's car. *Id.* Wright's defense counsel was provided with all remaining "body wire" tapes, though none of those tapes were presented as evidence. Pet'r's Mem. in Supp. of Mot. to Vacate at 24 (ECF No. 94). At the conclusion of the government's case-in-chief, Wright moved for a judgment of acquittal on the grounds that he was denied due process because the government mishandled evidence, that he was entrapped by the government, and that the evidence was insufficient. *Id.* This Court denied Wright's motion and ruled that he had failed to present evidence supporting his contention that the government had entrapped him and induced him to commit the crime, and because he did not request a jury instruction on entrapment, he could not make such an argument to the jury. *Id.*

On September 15, 2005, the jury convicted Wright on both counts. On May 4, 2006, this Court sentenced him to 240 months of imprisonment. *Id.* Wright filed an appeal on May 10, 2006. (ECF No. 55). On April 28, 2009, the United States Court of Appeals for the Fourth Circuit affirmed the judgment of this Court. (ECF No. 78).

On October 15, 2010, Wright filed the pending motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF No. 89).

## ANALYSIS

Wright alleges two main grounds for finding his judgment invalid. First, Wright alleges that the prosecution failed to disclose exculpatory evidence under *Brady v. Maryland,*

3

373 U.S. 83 (1963), and that this failure damaged his ability to make a valid entrapment defense. Pet'r's Mem. He asserts that the government falsely represented to the Court that the tape of his initial conversation with Saffell was lost, knowingly presented perjured testimony, and failed to disclose exculpatory information regarding Saffell's criminal record. *Id.* and Pet'r's Br. in Supp. Mot. for Discovery 1 (ECF No. 101-1). Second, Wright claims that his defense counsel rendered ineffective assistance of counsel by failing to introduce exculpatory evidence and exposing the government witness's perjured testimony. Pet'r's Mem. Wright does not meet his burden on either claim. The evidence Wright provides for his *Brady* claim is insufficient, and the record clearly shows that his trial counsel was well within an objective standard of reasonableness in such circumstances.

   I.   <u>Brady Violation Claim</u>

Wright contends that the government suppressed evidence by misrepresenting to the Court and the defense counsel that the government had lost the tape of Wright's initial conversation with Saffell. Pet'r's Mot. to Vacate 7 (ECF No. 89). Essentially, Wright argues that the government did not lose the tape containing the first conversation between Wright and Saffell, but deliberately withheld it so as to deprive Wright of exculpatory evidence. This argument is based on pure conjecture and Wright presents absolutely no evidence that would support such a claim. Wright claims this evidence would have been favorable to him and material to the outcome of his case, and that the government's actions violated his rights under *Brady v. Maryland,* 373 U.S. 83 (1963). Under *Brady v. Maryland*, prosecutors in a criminal case must turn over exculpatory evidence to the defense upon request. *Id.* at 87.

4

Failure to provide information that is favorable to the accused is a violation of the Due Process Clause of the Fourteenth Amendment where the evidence is material to guilt or punishment. *Id.*

Wright's claim fails because he cannot show that conversation on the missing tape would have been material. To prove a *Brady* violation, a petitioner must show that the prosecution was aware of material evidence favorable to the defense, yet failed to disclose it. *Moore v. Illinois,* 408 U.S. 786, 794–95 (1972). Evidence is material if its disclosure would have the reasonable probability of altering the outcome of the proceeding. *United States v. Bagley,* 473 U.S. 667, 682 (1985). Wright asserts that the "body wire" tapes contain a record of his initial conversation with Saffell and make no overt reference to drugs, and thus Wright claims that he could have used the recording to bolster his entrapment defense.

First, Wright's claim that the government withheld exculpatory evidence is flawed because, as the Respondent points out, the government did not fail to disclose these tapes—indeed they provided them to the defense counsel accurately labeled. Gov.'s Opposition at 8–9 (ECF No. 102). Wright has simply misinterpreted the first body wire tape as a recording of his and Saffell's initial conversation when, in fact, it is a tape recording of a subsequent conversation. Because the government did turn over all body wire tapes in its possession to Wright's defense counsel (except for the lost tape of Wright and Saffell's initial conversation), Wright cannot claim that the government did not disclose all possible tapes.

Second, Wright's claim that the first body wire tape contains evidence of entrapment also fails because the tape to which Wright refers is not a recording the initial conversation.

5

Wright asserts that the first body wire tape contains the initial conversation, and the conversation contained on this tape makes no overt reference to drugs. Pet'r's Mem. in Supp. of Mot. to Vacate at 25 (ECF No. 94). However, the conversation contains clear references to a previous conversation between Wright and Saffell, and therefore cannot be a recording of their initial conversation. Additionally, the fact that Saffell does not plainly state a desire to purchase drugs on the recording does not turn the tape into "favorable evidence [which] could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 410, 435 (1995). The reasonable inference from this recorded conversation, which was properly turned over to the defendant, is that Wright and Saffell had communicated previously and were confirming their plan to meet. Such evidence does not constitute the material exculpatory evidence as defined under *Brady*.

Lastly, Wright has filed a motion to amend his claim to add a new allegation regarding the government's failure to disclose impeachment information regarding the witness, Saffell. Pet'r's Mot. for Leave to Amend (ECF No. 101).[4] While the Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires," leave should be denied when amending the complaint would prejudice the opposing party, reward bad faith on the part of the moving party, or would amount to futility. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008). Further, "[l]eave to amend… should only be denied on the ground of futility when the proposed amendment is clearly

---

4 This claim would fall within the ambit of *Giglio v. United States*, 405 U.S. 150 (1972), establishing the requirement that evidence tending to impeach a government witness be disclosed to a defendant.

insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986).

Here, Wright claims that the government failed to disclose impeachable information when it did not notify the defense counsel of the existence of an assault charge against Saffell that was not filed until after the jury convicted Wright. This allegation is futile due to the fact that such a crime has no bearing on Saffell's character for truthfulness, and Federal Rule of Evidence 609(a)(2) mandates that courts admit evidence of past crimes only when they involve a dishonest act or false statement. Further, Wright would not have been able to argue inducement at trial because no charges were filed at the time of Saffell's testimony. Because admission of the assault charge against Saffell would have likely had no bearing on his character for truthfulness, allowing Wright to amend his complaint would be futile, and thus his motion is denied.

II.   Ineffective Assistance of Counsel Claim

Wright asserts that his counsel was ineffective for allegedly failing to review the taped recordings of Wright's conversations with Saffell, and he was therefore denied his right to a fair trial. Pet'r's Mot. to Vacate at 4 (ECF No. 89). A two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) governs the standard for examining ineffective assistance claims. First, a petitioner must demonstrate that the performance of his counsel was deficient by falling below an objective standard of reasonableness. *Id.* In making this determination, courts observe a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688–89. *See also, Lawrence v.*

*Branker,* 517 F.3d 700, 708 (4th Cir. 2008). Second, a petitioner must demonstrate that he suffered prejudice as a result of the defective performance. *Id.* The Supreme Court has made it clear that courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered a sound trial strategy." *Id.* at 689.

At the outset, Wright's claim that his trial counsel failed to review the body wire tapes is mere speculation. Wright presents no evidence that his trial counsel did not listen to the tapes. To the contrary, the trial record shows that Wright's counsel stated that he would listen to the tapes the very day he received them. Pet'r's Mem. in Supp. of Mot. to Vacate at 35 (ECF No. 94). Yet, even if Wright's speculation is to be given merit, the trial counsel's failure to review the tapes does not establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

First, Wright has failed to show that his trial counsel's failure to present the body wire tapes at trial falls below the objective standard of reasonableness. As the Fourth Circuit has stated, the question is not "what the best lawyer would have done or even what most good lawyers would have done, but instead whether some reasonable lawyer … could have acted, in the circumstances, as defense counsel acted." *Gilbert v. Moore*, 134 F.3d 642, 655 (4th Cir. 1998) (citing *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (internal quotations omitted). Given the content of body wire tapes, which may have implicated Wright in the

8

crime further by providing additional evidence of his involvement in the purchase, his trial counsel cannot be said to have acted in a manner no other reasonable lawyer could have acted in similar circumstances.  Therefore, it is clear that Wright has not met his burden of demonstrating that his counsel's performance was deficient by falling below an objective standard of reasonableness.

Second, Wright has failed to demonstrate that he suffered prejudice as a result of his counsel's alleged failure to review and present the tapes at trial.  Due to the inculpatory nature of the tapes, and their lack of any content that would support an entrapment defense, it is unlikely that these tapes would have changed the outcome of the trial in any way. Further, the Fourth Circuit noted this same presumption when it stated "Saffell's and the officer's testimony about the initial call – that it was a controlled call where Saffell arranged to purchase drugs from defendant – shows that, in all likelihood, the tape would have further inculpated defendant." *Wright*, 333 F. App'x at 777.  As such, Wright has failed to show that he suffered prejudice and did not receive a fair trial due to his trial counsel's failure to present the body wire tapes at trial.

Under these circumstances, the conduct of Wright's attorney was "within the range of competence normally demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687.  At no point does Wright point to "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687.  Further, there is no evidence that Wright was prejudiced by his attorney's conduct.  In fact, every indication is that Wright benefitted from his attorney's failure to present the body

9

wire tapes at trial.

## CONCLUSION

For the reasons stated herein, Wright's Motion to Vacate is DENIED. A Separate Order follows.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2) (2000). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

SO ORDERED.

Dated April 11, 2012.              /s/_____
                                   Richard D. Bennett
                                   United States District Judge